UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHELLE CHRISTINE KEMP,

                              Plaintiff,

                                                    Case # 19-CV-282-FPG

v.

                                                    DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff Michelle Christine Kemp[1] brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1; ECF No. 9-1 at 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 10. For the reasons that follow, the Commissioner's motion is DENIED, Kemp's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

In January 2016, Kemp applied for SSI with the Social Security Administration (the "SSA"). Tr.[2] 10, 153. She alleged disability due to bipolar disorder, ADHD, anxiety, depression, PTSD, obesity, shoulder bursitis (post surgery), a knee impairment, hip bursitis, and a back

---

[1] Kemp is formerly known as Michelle Christine Scroger. ECF No. 1.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

impairment. Tr. 10, 211. In February 2018, Kemp and a vocational expert appeared at a video hearing before Administrative Law Judge Eric Eklund ("the ALJ"). Tr. 10, 24. On March 5, 2018, the ALJ issued a decision finding that Kemp was not disabled. Tr. 10–24. On January 15, 2019, the Appeals Council denied Kemp's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether [claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted).

### II.    Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has

an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(a)(4)(ii), (c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 416.920(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

**I.   The ALJ's Decision**

The ALJ analyzed Kemp's claim for benefits using the process described above. At step one, the ALJ found that Kemp had not engaged in any substantial gainful activity since her application date. Tr. 12. At step two, the ALJ found that Kemp had eleven severe impairments: mild to moderate right knee degenerative joint disease; degenerative joint disease; trochanteric bursitis; status post left ankle fracture; status post left shoulder arthroscopy with release of biceps; debridement of superior labrum; subacromial decompression; distal clavicle and open biceps tendonitis; bipolar disorder; anxiety; and ADHD. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 13.

Next, the ALJ determined that Kemp had the RFC to perform sedentary work with additional limitations. Tr. 15. Specifically, the ALJ found that Kemp could: occasionally balance, stoop, and crouch; occasionally kneel on her left knee; occasionally perform foot control operations with her left lower extremity; occasionally push and pull with the left non-dominant upper extremity; frequently reach with the left upper extremity; and have superficial interaction with the public. *Id.* The ALJ further found that Kemp could not: climb ladders, ropes, or scaffolds; crawl; kneel on her right knee; perform foot control operations with her right lower extremity; overhead reach with the left upper extremity; ambulate over wet, uneven, and irregular surfaces; or interact with the public as part of her regular work duties. *Id.* Finally, the ALJ found that Kemp: is limited to climbing ramps and stairs only five percent of every hour; must avoid exposure to extreme cold, excessive vibration, moving machinery, and unprotected heights; is limited to simple, unskilled work; and is limited to only occasional interaction with coworkers and occasional supervision. *Id.* At steps four and five, the ALJ found that Kemp had no past relevant work but

4

that there were jobs that existed in significant numbers in the national economy that she could perform. Tr. 22. The ALJ therefore found that Kemp had not been disabled from January 29, 2016 (her application date) through the date of his decision. Tr. 23.

## II.   Analysis

Kemp argues that the ALJ's RFC determination that she could frequently reach with her left extremity was not supported by a competent medical opinion. ECF No. 9-1 at 26–29.[3] The Court agrees.

An RFC determination does not have to "perfectly correspond" with the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). But "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (internal quotation marks omitted). In other words, an ALJ's ability to make inferences about the functional limitations caused by an impairment does not extend beyond that of an ordinary layperson. *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) ("While an ALJ may render common sense judgment[s] about functional capacity, she must avoid the temptation to play doctor." (alteration in original) (internal quotation marks omitted)).

Here, the ALJ found that Kemp had a laundry list of medically determinable impairments that "significantly limit [her] ability to perform basic work activities." Tr. 12. In his RFC analysis,

---

[3] Kemp also argues for reversal based on the ALJ's alleged error at step five of the sequential evaluation process. ECF No. 9-1 at 20–26. The Court declines to address that argument because remand is appropriate based on the ALJ's failure to ground his RFC assessment on a competent medical opinion.

the ALJ found that, despite these impairments, Kemp was capable of performing sedentary work with additional, highly specific restrictions. Tr. 15–22. Kemp takes issue with the ALJ's determination that she could frequently reach with her left extremity. ECF No. 9-1 at 26. The ALJ claimed to give "some" weight to the opinion of Harbinder Toor, M.D., which is the only opinion discussed by the ALJ regarding the functional limitations caused by Kemp's shoulder issues. Tr. 15–22, 403–07.

An ALJ may not assign a medical opinion "some" weight and claim to premise his RFC determination on the opinion if he or she actually rejects the opinion in relevant part. *See Piper v. Comm'r of Soc. Sec.*, No. 18-CV-1311, 2020 WL 4499530, at *3–5 (W.D.N.Y. Aug. 4, 2020) (remanding where ALJ claimed to give "some" weight to a medical opinion but the ALJ effectively rejected the opinion by finding that additional limitations were warranted (collecting cases)). The Commissioner argues, however, that Dr. Toor's opinion is consistent with the ALJ's RFC determination. ECF No. 10-1 at 20–21.[4]

Although the ALJ did not specify the conflict between his RFC finding and Dr. Toor's opinion, he clearly believed that there was a conflict. The ALJ expressly discounted Dr. Toor's opinion because it was "not in regulatory terms." Tr. 21. The ALJ noted the opinion was "consistent with [his] finding that [Kemp] is seriously limited in her ability to perform the strength factors beyond sedentary work," but the ALJ explained he only granted "some weight to Dr. Toor's

---

[4] To the extent the Commissioner argues that the Kemp's reaching limitation was accounted for by limiting her to sedentary work, ECF No. 10-1 at 20–21, this assertion must be rejected. Kemp's limitation to sedentary work relates to her exertional capacity; the SSA has identified reaching as a nonexertional limitation. *See* 20 C.F.R. § 416.969a(a)–(c) ("The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertional levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling. . . . Limitations or restrictions which affect your ability to meet the demands of jobs other than the strength demands[] . . . are considered nonexertional."); SSR 96-9p, 1996 WL 374185, at *3 (S.S.A. July 2, 1996) ("[A] nonexertional limitation is an impairment-caused limitation affecting . . . reaching" (emphasis removed)).

assessment[] to the extent that [he found it] consistent with the physical exam findings from [Dr. Toor']s evaluation of [Kemp] and the cumulative evidence of record as outlined in th[e ALJ's] decision." *Id.* In relevant part, Dr. Toor noted Kemp's complaints of shoulder pain, diagnosed her with a history of bursitis in the left shoulder, and concluded that Kemp "has moderate to marked limitation reaching" because of her left shoulder pain. Tr. 403, 406. The ALJ translated Dr Toor's general conclusion that Kemp was moderately to markedly limited in reaching into his highly specific finding that Kemp could not overhead reach but could frequently perform other reaching with her left extremity. Tr. 15, 21. The Court is unable to discern the basis for the distinction between overhead reaching and other reaching.

Even the ALJ recognized that Dr. Toor's opinion regarding moderate to marked limitations was "not in regulatory terms." Tr. 21. Dr. Toor's opinion was too vague to support the ALJ's highly specific RFC assessment. *See Hayes v. Comm'r of Soc. Sec.*, No. 18-CV-963, 2020 WL 728271, at *3 (W.D.N.Y. Feb. 13, 2020) (finding medical opinion that claimant had "mild limitations for prolonged . . . overhead reaching" did not support specific RFC determination); *Ahmed A. J. v. Saul*, No. 18-CV-197, 2019 WL 4671513, at *6 (N.D.N.Y. Sept. 25, 2019) ("The use of the term 'moderate to marked limitations' is vague, and without an opinion as to the amount of time Plaintiff could stand or walk in an eight hour day, it fails to provide substantial evidence supporting the RFC determination."); *Blau v. Berryhill*, 395 F. Supp. 3d 266, 281 (S.D.N.Y. 2019) ("[T]he Second Circuit has held that when compiling an RFC from the record, an ALJ may not rely on opinions that employ the terms 'moderate' and 'mild' absent additional information." (collecting cases)).

"Specific RFC assessments must be based on evidence in the record, not on an 'ALJ's own surmise.'" *Elder v. Comm'r of Soc. Sec.*, No. 18-CV-1196, 2019 WL 6320355, at *5 (W.D.N.Y.

Nov. 26, 2019) (quoting *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order)).

In short, the ALJ may not weigh evidence and somehow "arrive at specific limitations that do not

appear anywhere in that evidence." *Heckman v. Comm'r of Soc. Sec.*, No. 18-CV-6032, 2019 WL

1492868, at *4 (W.D.N.Y. Apr. 4, 2019) (citing *McBrayer v. Sec'y of Health & Human Servs.*,

712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for

competent medical opinion.")).

Here, although Dr. Toor's opinion does "not contradict th[e ALJ's] highly specific

restriction, [the opinion] does not substantially support it, either." *Haygood v. Comm'r of Soc. Sec.*,

No. 18-CV-1164, 2020 WL 219145, at *2 (W.D.N.Y. Jan. 15, 2020) (remanding where medical

opinion "was too general to substantially support" ALJ's highly specific RFC determination). Nor

does the remainder of the record evidence reviewed by the ALJ support his RFC determination

with respect to the reaching limitation. The ALJ discussed Kemp's "left shoulder arthrogram in

August 2016" and found that Kemp's subjective complains of pain were supported by October

2016 MRI findings "showing left shoulder impingement with subacromial bursitis." Tr. 17.

Despite acknowledging "physical exam findings that show decreased mobility in all planes in her

non-dominant left shoulder," the ALJ found that the degree of limitation alleged by Kemp was not

supported by her conservative treatment. *Id.* Even assuming that Kemp's treatment was

conservative,[5] the ALJ never attempts to explain how this evidence supports his distinction

---

[5] The ALJ cites Kemp's use of prescription medications and a recommendation that she start a home
exercise regimen in June 2017, but the ALJ fails to acknowledge that these "conservative" treatment options
were implemented shortly after Kemp underwent surgery in October 2016. Tr. 17, 431–33, 449. Although
the ALJ notes Kemp's "left shoulder arthrogram in August 2016," he fails to discuss the October 2016
surgery. Tr. 17. This failure smacks of cherry picking. *See Younes v. Colvin*, No. 14-CV-170, 2015 WL
1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("'Cherry picking' can indicate a serious misreading of evidence,
failure to comply with the requirement that all evidence be taken into account, or both."). Given that Kemp
underwent surgical intervention the year prior, characterizing her treatment as "conservative" appears
dubious at best. *See Davila v. Comm'r of Soc. Sec.*, No. 16-CV-4774, 2018 WL 5017748, at *19 (E.D.N.Y.
Oct. 16, 2018) ("[T]he record leaves open the distinct possibility, not addressed by the ALJ, that plaintiff's

between overhead reaching and other types of reaching. *See Whalen v. Berryhill*, No. 18-CV-29, 2020 WL 1530847, at *3–4 (W.D.N.Y. Mar. 31, 2020) (holding that ALJ's failure to tether finding that claimant could "frequently" perform a task to the record evidence was reversable error). The ALJ also cites records that support the contrary conclusion—reflecting that Kemp's "left shoulder range of motion [was] significantly decreased in *all planes*," not just with respect to overhead reaching. Tr. 448–49, 452, 458, 464 (emphasis added).

The Commissioner argues that the ALJ was entitled to weigh all the evidence in the record and to resolve conflicts to make his RFC finding. ECF No. 10-1 at 18–22. While the ALJ is certainly permitted to resolve "[g]enuine conflicts in the medical evidence," *see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir 2002), the Commissioner fails to explain what conflicts the ALJ resolved and how resolving those conflicts allowed the ALJ to formulate Kemp's reaching limitation. ECF No. 10-1 at 18–22. The ALJ is prohibited from interpreting raw medical data and "playing doctor." *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 292 (W.D.N.Y. 2018) (internal quotation marks omitted).

In short, the ALJ failed to rely on medical opinion that could bridge the gap between clinical findings and specific functional limitations. Because of this failure, the Court is unable to conduct a meaningful review of the record evidence to determine whether the RFC is supported by substantial evidence. *Otts v. Colvin*, No. 15-CV-6731, 2016 WL 6677192, at *4 (W.D.N.Y. Nov. 14, 2016). Accordingly, remand is required.[6]

---

treatment during the period in review was 'conservative' because plaintiff had undergone surgery, a decidedly non-conservative treatment option, immediately prior to the period in review.").

[6] Kemp claims, without citation to authority, that she is entitled to remand for the sole purpose of determining her benefits. ECF No. 9-1 at 1–2, 29; ECF No. 11 at 2, 4, 9. Additional evidence or analysis, however, may support the Commissioner's claim that Kemp is not disabled. *See White v. Saul*, 414 F. Supp. 3d 377, 385 (W.D.N.Y. 2019) ("The standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability[] . . . and where there is no reason to conclude

**CONCLUSION**

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 10, is DENIED and Kemp's Motion for Judgment on the Pleadings, ECF No. 9, is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 25, 2020
      Rochester, New York

                                      HON. FRANK P. GERACI, JR.
                                              Chief Judge
                                  United States District Court

---

that the additional evidence might support the Commissioner's claim that the claimant is not disabled." (internal citations omitted)). For instance, even if the Commissioner determines on remand that Kemp is limited in all forms of reaching with her left extremity, the outcome at step five is unclear given that the VE did not testify as to how such a change in the ALJ's RFC determination would impact Kemp's employment opportunities. Tr. 68–76.